# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff

-vs-                                         Case No. 2:08-cr-38-FtM-99DNF

BOBBY HENRY HOLT,

        Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO SUPPRESS ALL EVIDENCE OBTAINED BY LAW ENFORCEMENT DURING, FOLLOWING AND PURSUANT TO THE EXECUTION OF A SEARCH WARRANT DATED FEBRUARY 14, 2008 (Doc. No. 49)** |
| **FILED:** | **October 3, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

    The Defendant, Bobby Holt is requesting that the Court suppress all the evidence obtained from a search of his residence pursuant to a search warrant obtained by a state court judge.  The Government filed a Response (Doc. 54).  The Defendant filed a Supplemental Memorandum of Law (Doc. 65).  An evidentiary hearing was held on October 22, 2008.  The Defendant is charged in a three count Indictment.  In Count One, the Defendant is charged with possessing a visual depiction of a minor engaging in sexually explicit conduct which had been mailed, shipped or transported in interstate commerce in violation of 18 U.S.C. §§2252(a)(4)(B) and 2252(b)(2).  In Count Two, the Defendant

is charged with employing, using persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction what had been mailed, shipped, or transported in interstate commerce by use of a computer in violation of 18 U.S.C. §§2251(a) and 2251(e).  In Count Three, the Defendant is charged with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2).

## I. Testimony and Evidence

The Government presented the testimony of Detective Francesca Kraft who is retired from the Lee County Sheriff's Office.  The Government introduced into evidence as Government Exhibit 1, the Affidavit for Search Warrant.

### A. Testimony of Detective Kraft

Detective Kraft testified that on February 14, 2008, she was working for the Lee County Sheriff's Office in the Special Victims Unit investigating sex crimes against adults and children. (Tr.[1] p. 4).  On February 12, 2008, she received a report regarding the Defendant and a minor victim. (Tr. p. 5-6). On February 14, 2008, she interviewed the victim and the victims's mother and recorded their statements. (Tr. p. 6).  From Detective Kraft's notes and memory, she prepared an affidavit and search warrant. (Tr. p. 6). The mother told Detective Kraft that she learned of the sexual activity between the Defendant and her daughter on February 9, 2008. (Tr. p. 15).   Detective Kraft stated in the affidavit that the mother was married to the Defendant in 2005. (Tr. p. 7).  The victim began living with them in the summer of 2005. (Tr. p. 7).  The mother noticed that the Defendant bought the victim expensive gifts, and called her by pet names. (Tr. p. 7).  The mother asked the victim if she was having sex with

---

[1] "Tr." refers to the Transcript (Doc. 63) filed on November 5, 2008 of the evidentiary hearing held on October 22, 2008.

the Defendant. (Tr. p. 7).   On February 9, 2008, the mother learned that the Defendant and the victim had engaged in sexual relations.

On February 14, 2008, the victim and mother obtained an injunction against the Defendant for their protection. (Tr. p. 8).   Information regarding the injunction was in the affidavit. (Tr. p. 8).   The victim told Detective Kraft that once she moved in with her mother and the Defendant in the summer of 2005, he began touching her inappropriately and they had sexual relations over 100 times. (Tr. p. 10). The victim was photographed during these sexual encounters.  (Tr. p. 10).  There were sex toys used during these encounters.  (Tr. p. 10).  In addition, the victim told her that the Defendant provided illegal drugs to her in exchange for sex. (Tr. p. 10).  The sexual encounters occurred in Lee County through November 2007, and continued when the Defendant moved to Hendry County.  (Tr. p. 11). In addition, the victim told Detective Kraft that the Defendant took photographs of her naked, of her genitalia, and of her with other people. (Tr. p. 11).   These photographs were taken on a cellular telephone and a digital camera. (Tr. p. 11).  Based upon the statements from the victim and the mother, Detective Kraft sought a search warrant.(Tr. p. 11-12).  She believed should would find evidence of unlawful sexual activity with certain minors which is a violation of a State statute.  (Tr. p. 12).

Detective Kraft got directions to the Defendant's residence from Mapquest, and sent a deputy to the residence to verify that it was the correct location. (Tr. p. 12-13).   Detective Kraft was seeking the following items: photographs, cameras, cell phones, a duffle bag with sex toys, and a computer.  The mother told Detective Kraft that the victim was concerned that  the Defendant had uploaded the photographs on a digital camera and a cellular telephone onto the computer. (Tr. p. 13).  Detective Kraft learned of the victim's concern regarding the uploading of the photographs as Detective Kraft was driving to the state court judge's chambers to have the search warrant signed. (Tr. p. 14).

Detective Kraft added a handwritten statement in the search warrant regarding the victim's concerns and added information about the cellular telephone that she had forgotten to include when typing the warrant. (Tr. p. 14).   Detective Kraft worded the search warrant to include evidence that could be transferred due to technology advances. (Tr. p. 15).   The Affidavit in support of the search warrant does not include all of the information that Detective Kraft learned, however, she believed it included enough for probable cause to justify the search of the Defendant's residence. (Tr. p. 16).

The search warrant was executed in the morning hours of February 15, 2008. (Tr. p. 16). Once the Defendant was secured, Detective Kraft entered the house and assisted with the search of the Defendant's residence. (Tr. p. 17-18).   The items seized included pictures, cameras, cellular telephones, a camouflage duffle bag, narcotics, drug paraphernalia, a computer, movies, and two rifles. (Tr. p. 18). The mother told Detective Kraft that the Defendant had firearms in the residence.  (Tr. p. 19). Detective Kraft checked the Defendant's criminal history and found that he was a convicted felon.  (Tr. p. 19).   The information as to whether the Defendant's civil rights had been restored could not be verified prior to the search. (Tr. p. 55).   The weapons were found under the Defendant's bed which is an area where the officers were searching for other items. (Tr. p. 49).   The weapons are in the Government's possession. (Tr. p. 49-50).

Detective Kraft testified that there are two errors in the search warrant. (Tr. p. 20).  One error is that the mother is referred to as Mrs. Jackson rather than Mrs. Johnson, and the second error is that the Affidavit states that "Holt pressured her into having sexual relations with other women and men, so he could photograph them." ( Tr. p. 20-21, Gov. Exh. 1, p. 2, ¶3).   The correct statement is that the Defendant pressured the victim into having sexual relations with other women and with the Defendant. (Tr. p. 21).

-4-

On cross-examination, Detective Kraft testified that she did not include in the Affidavit that the victim no longer lived with the Defendant. (Tr. p. 25-26).   She testified that the victim had only been gone for one week from the residence as of February 14, 2008, and that the sexual encounters had occurred to the best of the victim's recollection approximately 30 days prior to the date Detective Kraft completed her report.  (Tr. p. 46). (Tr. p. 27).  Detective Kraft did not inform the state court judge that the mother and the Defendant were recently divorced. (Tr. p. 32-33).   She did include that the Defendant and the mother had an abusive relationship and the mother obtained an injunction against the Defendant. (Tr. p. 33).  Detective Kraft testified that the weapons were taken for safe-keeping until the officers verified whether the Defendant's civil rights had been restored. (Tr. p. 34).   If not, the weapons were evidence of an additional crime. (Tr. p. 35). Detective Kraft admitted that she did not have specific dates and locations for the sexual encounters but provided a range of dates for the sexual encounters that occurred in Lee County.  (Tr. p. 36).   She testified that the victim did not provide specific dates and locations possibly due to her narcotics use. (Tr. p. 39).   Detective Kraft also testified that she did not have specific dates and locations for the photographs that were taken of the victim, but she believed that evidence would still be found in the Defendant's possession. (Tr. p. 39-40).

### B.  Affidavit for Search Warrant

The Affidavit contained the following information.  The residence to be searched was 7261 State Road 80, Labelle, Hendry County, Florida described as a gray trailer on the business property of Matt Millers Tractor and Trailer. (Gov. Exh. 1, p. 1)  On February 9, 2008, the Lee County Sheriff's Office received information relating to Unlawful Sexual Activity with Certain Minors. (Gov. Exh. 1,

p. 1)  The Sheriff's Office was contacted by Angela Jackson[2] who related that her daughter was a victim of sexual abuse.  (Gov. Exh. 1, p. 1).  Her daughter told her that her stepfather, Bobby Holt had sexually abused her since she was fourteen years old. (Gov. Exh. 1, p.1).  The victim is now seventeen years old.  (Gov. Exh. 1, p. 1).  Bobby Holt was identified as a thirty-nine year old male who resided in the trailer described above.  (Gov. Exh. 1, p. 1). On February 14, 2008, Detective Kraft met with the mother and the victim and recorded their statements.  (Gov. Exh. 1, p. 1).  The mother was married to the Defendant in 2005, and in the summer of 2005, the victim came to live with them in Lehigh Acres.  (Gov. Exh. 1, p. 1).  The mother and the Defendant had a violent relationship, and he threatened her and physically abused her. (Gov. Exh. 1, p. 1).  The mother noticed that the Defendant paid special attention to the victim and called her by pet names. (Gov. Exh. 1, p. 1).  The mother never witnessed any inappropriate behavior between the Defendant and the victim. (Gov. Exh. 1, p. 1).  The mother stated that the victim used drugs, and that her behavior had changed. (Gov. Exh. 1, p. 1). In the past, when asked by the mother, the victim denied that the Defendant acted inappropriately to her. (Gov. Exh. 1, p. 1).  The mother knew that the Defendant had a past history of drugs and alcohol use, but she never witnessed it.  (Gov. Exh. 1, p. 1).  The mother received a telephone call on February 9, 2008 from her daughter  telling her about the sexual abuse, and upon learning this information, the mother contacted the Sheriff's Office.  (Gov. Exh. 1 p.2).

The mother filed for an injunction to protect herself and her daughter against the Defendant. (Gov. Exh. 1, p. 2).  The mother believed that the Defendant was unstable, and he had numerous firearms in his possession. (Gov. Exh. 1, p. 2).  Further, the Defendant was a convicted felon and had

---

[2]  Detective Kraft testified that "Jackson" should have been "Johnson".

made statements that he would kill someone before he would go back to jail.  (Gov. Exh. 1, p. 2).   The injunction was approved on February 14, 2008.  (Gov. Exh. 1, p. 2).

The victim told Detective Kraft that she had been having a sexual relationship with the Defendant since she was fourteen years old.  (Gov. Exh. 1, p. 2).  The victim said that the Defendant had started touching her inappropriately shortly after she moved in with him and her mother, and then proceeded to have sexual relations with her.  (Gov. Exh. 1, p. 2).  They used sex toys during their sexual relations.  (Gov. Exh. 1, p. 2).  The Defendant would provide the victim with drugs and alcohol if she had sexual relations with him, and she was dependent upon him to supply her drugs.  (Gov. Exh. 1, p. 2).  She admitted to using cocaine, marijuana, Xanax, and other narcotics.  (Gov. Exh. 1, p. 2). She believed she had sex with the Defendant over 100 times.  The last incident in Lee County occurred at the end of November 2007 at her mother's house in Lehigh Acres.  (Gov. Exh. 1, p. 2). The victim stated that the sexual encounters continued between her and the Defendant after he moved to Hendry County.

The victim told Detective Kraft that the Defendant often took photographs of her, clothed, naked, and of her genitalia. (Gov. Exh. 1, p. 2).  She was pressured into having sexual relations with other women and other men.[3]  (Gov. Exh. 1, p. 2). The victim said that the photographs were put on a computer screen and on a cell phone. (Gov. Exh. 1, p. 2).

The area to be searched included the residence and all people within the residence. (Gov. Exh. 1, p. 2). The evidence that was believed to be within the residence included but was not limited to cameras, photographs of the victim, cell phone cameras, camouflage duffel bag, sex toys, illegal

---

[3]  Detective Kraft testified that the "other men" was in error and it should have been with Bobby Holt instead.

narcotics, narcotic paraphernalia, and other related items, including any computer and computer related equipment that can be used to access the internet. (Gov. Exh. 1, p. 2). The Affidavit then provided a specific list of items to be searched. (Gov. Exh. 1, p. 2). The Search Warrant stated that the state court judge found probable cause to believe that the Defendant violated the laws of the State of Florida as to Unlawful Sexual Activity with Certain Minors, Fla. Stat. §794.05. (Gov. Exh. 1, Search Warrant p. 1).

## II. Analysis

The Defendant asserts that the search warrant and affidavit in support do not contain sufficient information to constitute probable cause. Further, the Defendant asserts that Detective Kraft knowingly omitted key material facts from the affidavit and warrant that were known to her at the time the search warrant was issued.

### A. Alleged Omissions

The Defendant asserts that Detective Kraft omitted that from the Affidavit when the victim had moved out of the Defendant's home, and when the last sexual encounter between the victim and the Defendant occurred. Further, the victim in her statement to Detective Kraft failed to provide information as to when the photos were taken, where the photos were taken, when the victim last saw them, when she last saw the cell phone and camera which was stored in an armoire, the types of cell phone and camera, whose cell phone was used, whether the armoire was locked, who had access to the armoire, and who else had access to the cell phone and camera. The Defendant contends that the victim failed to state when and where she last saw the camouflage bag with sex toys in it, and the

Affidavit fails to contain information as to the Defendant taking the victim to the doctor to obtain prescription drugs. Further, no mention was made that the victim had a narcotics problem since she was 14 years old. The Defendant argues that the Affidavit failed to contain information that the victim shared an apartment with her boyfriend when she was 15 years old. Further, the Defendant argues that there was no mention that the Defendant kept or stored pornographic photographs on a computer. At the hearing, the Defendant argued that the Affidavit should have contained information about the relationship between the mother and the Defendant.

To establish probable cause in an affidavit in support of a search warrant, the affidavit "must 'state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched.'" *United States v. Umansky*, 2008 WL 3890160, *1 (11th Cir. Aug. 22, 2008) (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)). When the veracity of a search warrant is attacked, the defendant must make a preliminary showing that "the affiant made intentional misstatements or omissions (or made misstatements with a reckless disregard for their truthfulness) that were essential to the finding of probable cause. *United States v. Burston*, 159 F.3d 1328, 1333 (11th Cir. 1998), (citing *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997), *United States v. Cross*, 928 F.2d 1030, 1040 (11th Cir. 1991), *cert. den.*, 502 U.S. 985 (1991)). Negligence or innocent mistake are not sufficient. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). If the judge relies on an affidavit which contains deliberate falsehoods or material omissions, then suppression is required "if the remainder of the affidavit fails to establish probable cause." *United States v. Abbell*, 963 F.Supp. 1178, 1194 (S.D. Fla. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676-77, 57 L.Ed.2d 667 (1978)), and see *United States v. Umansky*, 2008 WL 3890160, *1 (11th Cir. Aug. 22, 2008). If an omission is "merely negligent or insignificant and

immaterial", the search warrant will not be invalidated. *United States v. Unmansky*, 2008 WL 3890160 at *1.   If the defendant prevails, then the search warrant must be voided and the fruits of the search suppressed.   *United States v. Burston*, 159 F.3d at 1333. The defendant bears the burden of establishing by a preponderance of the evidence that the allegations in the affidavit were false or there was a reckless disregard for the truth.   *United States v. Unmansky*, 2008 WL 3890160 at *1, (citing *United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001)).

The Court must consider whether any of the alleged omissions and false statements were made deliberately or with reckless disregard for the truth.  The Defendant argues that Detective Kraft omitted many facts, such as the dates and locations of the sexual encounters; the dates and locations of the photographs; information about the cell phone, camera, computer, and duffle bag; information about the victim's drug use; information about the victim's living situation; and information about the mother's relationship with the Defendant.  Detective Kraft included a period of time when the sexual encounters occurred and the photographs were taken.  She included all of the information that she had regarding the cell phone, camera, computer and duffle bag as well as the victim's past drug use.  The Affidavit also includes information that the mother requested an injunction against the Defendant to protect herself and her daughter.  The Defendant has not shown that Detective Kraft knew the information that the Defendant claims was omitted,  nor has the Defendant shown that Detective Kraft intentionally omitted any of this information from the Affidavit or that the omitted information was material.

Detective Kraft admitted that there were two errors in the Affidavit.  First, the name of the mother was incorrect and second the statement that the victim was pressured into having sexual relations with other women and other men was incorrect and should have said other women and the

Defendant.  Detective Kraft testified that after the Search Warrant was executed she reviewed the Affidavit and saw these errors.  The Defendant has failed to show that Detective Kraft intentionally included these errors in the Affidavit, or included them with reckless disregard for the truth.

In the Supplemental Memorandum of Law (Doc. 65), the Defendant argues that the Affidavit failed to state that the victim had sexual encounters with the Defendant at his residence in Hendry County.  The evidence the officers were searching for was evidence regarding unlawful sexual activity with certain minors.  The evidence, such as photographs, cameras, cell phones, sex toys and computers would be located with the Defendant, and it is reasonable that the Defendant had these items at his residence whether or not any sexual encounters occurred at his residence.

The evidence presented in the Affidavit established probable cause without the omitted information and with the two errors.[4]   The Affidavit described the location to be searched with particularity.  The Affidavit contained information from the mother of the victim about what the victim had told her and included information about the abusive relationship the mother had with the Defendant. The Affidavit included the information that the mother had not witnessed the sexual abuse, however, the mother did notice that the Defendant paid special attention to the daughter.  The Affidavit contained detailed information about the sexual relationship between the Defendant and the victim. The victim described her encounters with the Defendant including the use of sex toys, and how the Defendant supplied her with drugs and alcohol in exchange for sex.  The victim supplied a range of dates for these encounters and photographs. She also described the contents of the photographs and the electronic equipment where these photographs were kept.  Considering all of the facts provided in the Affidavit in support of the Search Warrant, the Court finds with the exception of the issue of

---

[4]  The Court will discuss the issue of staleness in a separate section.

staleness, the Affidavit contains sufficient facts to establish that evidence of a crime of Unlawful Sexual Activity with certain Minors would probably be found at the Defendant's residence.

### B. Staleness

The Defendant asserts that the information in the Affidavit in support of the search warrant was stale. The last known date of any sexual encounter was November 2007, and the Search Warrant was signed on February 14, 2008. The Government asserts that the information in the Affidavit is not stale and that cases involving child pornography are distinguishable from cases involving illegal drugs.

For a finding of probable cause, an Affidavit must contain facts that show that it is likely that the items sought are in that residence when the warrant is issued, and therefore, the search warrant must be timely. *United States v. Deering*, 2008 WL 4636491, * 3 (11th Cir. Oct. 20, 2008). "We have developed a staleness doctrine in the context of probable cause which requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *U.S. v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). To determine if the information in support of a search warrant is stale, courts must evaluate the facts in each particular case. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994), *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985) "To satisfy the probable cause standard, the government 'must reveal facts that make it likely that the items being sought are in that place when the warrant issues.'" *Harris*, 20 F.3d at 450, citing *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985). Probable cause must exist when the judge issues the search warrant and the information supporting the government's application must be timely. *Harris*, 20 F.3d at 450. If an application for a warrant is based upon stale information then it fails to create probable cause that similar or other criminal conduct is continuing.

-12-

*Id.*, citing *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984), and *United States v. Deering*, 2008 WL 4636491 *3 (11th Cir. Oct. 20, 2008).   When conducting a case-by-case determination, courts may consider "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Harris*, 20 F.3d at 450, (citations omitted). "'There is no particular rule or time limit for when information becomes stale.'" *United States v. Deering*, 2008 WL 463491 *3 (11th Cir. Oct. 20, 2008) (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000)).

A similar case was decided in the Middle District of Florida.   In *United States v. Sarras,* 2007 WL 3231797, *5 (M.D. Fla. Oct. 30, 2007), an affidavit in support of a search warrant was executed. The crime the officers were investigating was unlawfully possessing material to include sexual conduct by a child. *Id*. at 7.   The affidavit set forth that between October 2006 through January 2007, the defendant had sexually battered his fourteen year old stepdaughter at his residence. *Id*.   The affidavit was sworn on May 7, 2007. *Id*. at *6.   The victim stated that she had been sexually battered by the defendant from October 2006 through January 2007. *Id*.   The victim described some of the details of these encounters, but was no more specific about the dates of the encounters. *Id*.   The victim stated that the defendant had taken digital camera pictures of the defendant and the victim engaging in sexual intercourse. *Id*.   The victim did not know the type of camera, only that it was stored at the defendant's residence. *Id*.   The defendant argued that the information was stale. *Id*. at 8.   The Court found that due to the nature of the crime which was child pornography, and the items that were sought which were digital images, the court reasoned that these images are normally retained and stored by a defendant. *Id*. (citing *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) and *United States v.*

*Miller*, 450 F.Supp.2d 1321 (M.D. Fla. 2006)).   The Court determined that a delay from January 2007 to May 7, 2007 in obtaining a search warrant did not render the information in the search warrant stale.

In the instant case, the last actual date as to sexual relations between the victim and the Defendant in the search warrant was November 2007, but the search warrant also contained information that the sexual relations continued after that date.   In the instant case, at most the delay in obtaining the search warrant was from November 2007 to February 2008, a delay of 3 months. However, the suspected crime in this case was sexual relations with a minor which included taking photographs of the minor engaged in sexual activities.   The alleged crime was on-going for years, and some of the items sought were the visual depictions of the alleged crime.   Courts have held that suspects in the crime of child pornography usually store and retain the photographs.  *See*, *United States v. Sarras*, 2007 WL 3231797, *8 (M.D. Fla. Oct. 30, 2007).   Therefore, the Court finds that a possible delay from November 7, 2007 to February 2008 does not render the information stale.

In the instant case, the Defendant also raised the issue that the victim did not make any statements that the Defendant kept or stored pornographic images of her on a computer.  In *United States v. Sarras*, *supra*, the Court also discussed the relationship between digital cameras and computers.   The court cited the proposition that a court "'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Sarras,* 2007 WL 3231797, *7  (M.D. Fla. Oct. 30, 2007)  (quoting *United States v. Whitner*, 219 F.3d 289, 296 (3rd Cir. 2000) (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)).   The court determined that "it is common knowledge that a digital camera is capable of (and indeed designed for storing images and transferring images to a computer; therefore, it is reasonable to infer that the evidence (the images) were likely kept on the camera and on a computer.

The purpose of taking photographs, after all, is to retain them for later viewing." *Id.* The Court determines that it was reasonable to infer that the photographs that the Defendant took on a camera or cell phone would be kept on a computer.

### III.  Conclusion

The Court respectfully recommends that the Motion to Suppress All Evidence Obtained by Law Enforcement During, Following and Pursuant to the Execution of a Search Warrant Dated February 14, 2008 (Doc. 49) be denied, and the evidence seized not be suppressed.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this ___13th___ day of November, 2008.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record